| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:15-CR-119(5) |
| § | |
| KODY DWAYNE ARDOIN § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Kody Dwayne Ardoin's ("Ardoin") § 3582(c)(1)(A) Motion for Compassionate Release (#802). The Government filed a response in opposition to the motion (#803) as well as an Amended Response (#827). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends denying the motion. Having considered the motion, the Government's responses, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I. Background

On May 4, 2016, a federal grand jury in the Eastern District of Texas returned a four-count Third Superseding Indictment (#52) charging Ardoin in Count One with Conspiracy to Possess With Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846. He was not named in the remaining three counts. On January 25, 2017, following a three-day trial, a jury returned a guilty verdict against Ardoin as to Count 1 of the Third Superseding Indictment. Subsequently, on October 2, 2017, the court sentenced Ardoin to 324 months' imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)). On September 28, 2018, the United States Court of Appeals for the Fifth Circuit affirmed Ardoin's conviction and sentence. *See United States v. Walker*, 750 F. App'x 324 (2018). He did not seek a writ of certiorari from the Supreme Court of the United States. On January 17, 2025, former

President Joseph Biden accorded Ardoin an Executive Grant of Clemency, which reduced his sentence to 180 months' imprisonment (#813).

Ardoin seeks compassionate release contending that various sentencing errors violated his right to due process of law: (1) an enhancement that increased his offense level by 3 points for having a leadership role in the drug conspiracy; (2) categorizing his criminal history as Category III rather than Category II; and (3) being held accountable for 4,881 grams of cocaine base that should not have been attributed to him because 4,620 grams were "unreliable." Ardoin is currently housed at Federal Correctional Institution Manchester ("FCI Manchester"), located in Manchester, Kentucky, with a projected release date of March 23, 2029.

II.     Nature and Circumstances of the Offense of Conviction

The Fifth Circuit summarized the facts of Ardoin's offense of conviction in its opinion affirming the verdict and sentence, stating:

> For about two decades, the home at 1107 Avenue A in Beaumont was the headquarters of a family-operated business. Crack cocaine was the product. The operation included the mother and father, their five sons, several cousins, and other family friends. Local police would occasionally make arrests, and some family members served time on state charges, but others would quickly pick up the slack and continue the operation. Taking a new approach, a federal investigation led to a grand jury indictment of thirteen people for conspiring to distribute 280 grams or more of crack cocaine between January 2006 and May 2016. Six were also charged with conspiring to possess firearms in furtherance of the drug trafficking.
>
> Three defendants went to trial: two of the sons, Kristopher and Kody Ardoin, and one of the cousins, Zerrick Walker. All three faced the drug conspiracy charge. Only Kristopher was charged with the firearm conspiracy. The jury found them guilty on all counts, attributing 280 grams or more of crack to both the drug conspiracy and each defendant individually. The district court sentenced Kody to 27 years, Walker to a mandatory minimum of 20 years, and Kristopher to concurrent sentences of mandatory life for the drug offense and 20 years for the firearms conviction.
>
> \* \* \*

> *Evidence about the conspiracy generally.* Numerous people in the community told police about buying crack at 1107 Avenue A. A constant stream of people entered and exited the house, perhaps as many as 15 an hour, and the two-block surrounding area received hundreds of disturbance calls. Police found crack in the house (among other drugs and paraphernalia) while executing four different search warrants, seizing 151.6 grams in the investigation. One witness bought crack from each of the defendants between 20-50 times after he began using in 2013.
>
> \*\*\*
>
> *Evidence specific to Kody.* Witnesses also observed Kody repeatedly engaging in hand-to-hand drug transactions. He was present when police found crack cocaine during three searches of 1107 Avenue A. When police found crack after searching another house a block away, Kody was again at he scene. After one arrest, Kody informed an officer that he had hidden crack in his anal cavity; when recovered it weighed about 5.5 grams. A customer said he had observed Kody with as much as 28 grams of crack cocaine on one occasion. Another explained that Kody "rented" his car in exchange for crack cocaine for five months, giving him about an ounce a week (about 28.3 grams), an amount Kody later told him was worth more than $20,000. This witness noted that he sometimes rode with Kody and Walker as they sold drugs from his car.

*Ardoin*, 750 F. App'x at \*325-27. The opinion contains a chart detailing the quantity of drugs attributable to each defendant. With regard to Kody, the court lists the following quantities attributed to him: Seized and Tested Crack Cocaine–151.6g; Kristopher's 2010 Arrest–3.9g; Kody's Car Stop–5.5g; Broussard's testimony–63g; Roberson's testimony–255g; Walker's admissions–24g; Total–503g." *Id*. at \*328.

III.   Compassionate Release

    A.   Overview

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the

3

court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id.* § 1B1.13(b). These categories are:

    (1) the medical circumstances of the defendant;

    (2) the age of the defendant;

    (3) the family circumstances of the defendant;

    (4) whether the defendant was a victim of abuse while in custody;

    (5) other reasons similar in gravity to those previously described; and

    (6) an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release or a sentence reduction on his own motion must satisfy the following hurdles:

    (1)    the defendant must have exhausted his administrative remedies;

    (2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

    (3)    the reduction must be consistent with the Commission's applicable policy statements; and

    (4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

    B.    <u>Exhaustion of Administrative Remedies</u>

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release or sentence reduction unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues.");

*United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release or a sentence reduction on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id*.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief. Ardoin makes no mention and gives no indication in his motion that he attempted to exhaust his administrative remedies, and there is no evidence before the court that he has sought relief from the warden or other BOP personnel. Further, counsel for the Government states that

7

he "can attest that the BOP has no records in its possession supporting the proposition that Ardoin has exhausted his administrative remedies." Absent such evidence, Ardoin cannot prevail. The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, "the court *must* enforce the rule."); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

Therefore, due to Ardoin's failure to exhaust his administrative remedies, the court lacks the authority to grant the relief he seeks.

IV. Conclusion

Accordingly, in light of Ardoin's failure to exhaust his administrative remedies, his motion for compassionate release presents no grounds for relief that are cognizable by the court. Ardoin has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Consistent with the foregoing analysis, Ardoin's § 3582(c)(1)(A) Motion for Compassionate Release (#802) is DENIED.

In addition, Ardoin's Motion for Clarification (#823) is DENIED AS MOOT, as it does not pertain to his § 3582(c)(1)(A) Motion for Compassionate Release filed in the case at bar but to his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, docketed in Civil Action No. 1:19-cv-00180-MAC-ZJH.

SIGNED at Beaumont, Texas, this 12th day of September, 2025.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE