**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:15-CR-119(5) |
| | § | |
| KODY DWAYNE ARDOIN | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Kody Dwayne Ardoin's ("Ardoin") Emergency Motion to Correct Clerical Error Under Federal Rule Criminal Procedure 36 (#840). The Government filed a response in opposition to the motion (#849). Having considered the motion, the Government's response, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

On May 4, 2016, a federal grand jury in the Eastern District of Texas returned a four-count Third Superseding Indictment (#52) charging Ardoin in Count One with Conspiracy to Possess With Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846. He was not named in the remaining three counts. On January 25, 2017, following a three-day trial, a jury returned a guilty verdict against Ardoin as to Count 1 of the Third Superseding Indictment. Subsequently, on August 25, 2017, the court sentenced Ardoin to 324 months' imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)) (#590). On September 28, 2018, the United States Court of Appeals for the Fifth Circuit affirmed Ardoin's conviction and sentence, and Judgment was entered on October 23, 2018 (#659). *See United States v. Walker*, 750 F. App'x 324 (2018). He did not seek a writ of certiorari from the Supreme Court of the United States. On January 17, 2025, former President Joseph Biden

accorded Ardoin an Executive Grant of Clemency, which reduced his sentence to 180 months' imprisonment (#813).

Ardoin now asks the court to correct what he contends to be clerical errors in the Presentence Investigation Report ("PSR") issued in this case by the United States Probation and Pretrial Services Office for the Beaumont Division of the Eastern District of Texas ("Probation") on July 20, 2017. Specifically, he disputes the calculation in Paragraph 35 of the drug quantity of 4,100 grams from officer surveillance and the calculation in Paragraph 34 of the drug quantity of 420 grams from witness testimony. He also challenges the adjustment imposed under U.S.S.G. § 3B1.1(b) for his being a manager or supervisor of a drug trafficking organization as set forth in Paragraph 45. He claims all these calculations to be "clerical mistakes" made by the Probation Officer when preparing the PSR that are subject to correction under Rule 36 of the Federal Rules of Criminal Procedure. At sentencing, on August 24, 2017, after the court considered and ruled on the objections raised by Ardoin that encompass the calculations he now disputes, the court found the information contained in the PSR to have sufficient indicia of reliability to support its probable accuracy. The court overruled various objections lodged by Ardoin and adopted the factual findings, undisputed facts, and guideline applications in the PSR. The court, based on a preponderance of the evidence presented and the facts in the report, while viewing the Sentencing Guidelines as advisory, concluded that the total offense level was 39 and the criminal history category was III, which provided for an advisory guideline range of 324 to 405 months' imprisonment. The court sentenced Ardoin to 324 months's imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)), the bottom of the guideline range, to be followed by 5 years of supervised release (#590). Ardoin's sentence was

subsequently reduced to 180 months' imprisonment on January 17, 2025, when he was granted clemency by former President Joseph Biden (#813).  Ardoin is currently housed at Federal Correctional Institution Manchester ("FCI Manchester"), located in Manchester, Kentucky, with a projected release date of January 7, 2029.

II.    Nature and Circumstances of the Offense of Conviction

The Fifth Circuit summarized the facts of Ardoin's offense of conviction in its opinion affirming the verdict and sentence, stating:

> For about two decades, the home at 1107 Avenue A in Beaumont was the headquarters of a family-operated business.  Crack cocaine was the product.  The operation included the mother and father, their five sons, several cousins, and other family friends.  Local police would occasionally make arrests, and some family members served time on state charges, but others would quickly pick up the slack and continue the operation.  Taking a new approach, a federal investigation led to a grand jury indictment of thirteen people for conspiring to distribute 280 grams or more of crack cocaine between January 2006 and May 2016.  Six were also charged with conspiring to possess firearms in furtherance of the drug trafficking.
>
> Three defendants went to trial:  two of the sons, Kristopher and Kody Ardoin, and one of the cousins, Zerrick Walker.  All three faced the drug conspiracy charge.  Only Kristopher was charged with the firearm conspiracy.  The jury found them guilty on all counts, attributing 280 grams or more of crack to both the drug conspiracy and each defendant individually.  The district court sentenced Kody to 27 years, Walker to a mandatory minimum of 20 years, and Kristopher to concurrent sentences of mandatory life for the drug offense and 20 years for the firearms conviction.
>
> * * *
>
> *Evidence about the conspiracy generally*.  Numerous people in the community told police about buying crack at 1107 Avenue A.  A constant stream of people entered and exited the house, perhaps as many as 15 an hour, and the two-block surrounding area received hundreds of disturbance calls.  Police found crack in the house (among other drugs and paraphernalia) while executing four different search warrants, seizing 151.6 grams in the investigation.  One witness bought crack from each of the defendants between 20-50 times after he began using in 2013.
>
> ***

3

> *Evidence specific to Kody*.  Witnesses also observed Kody repeatedly engaging in hand-to-hand drug transactions.  He was present when police found crack cocaine during three searches of 1107 Avenue A.  When police found crack after searching another house a block away, Kody was again at the scene.  After one arrest, Kody informed an officer that he had hidden crack in his anal cavity; when recovered it weighed about 5.5 grams.  A customer said he had observed Kody with as much as 28 grams of crack cocaine on one occasion.  Another explained that Kody "rented" his car in exchange for crack cocaine for five months, giving him about an ounce a week (about 28.3 grams), an amount Kody later told him was worth more than $20,000.  This witness noted that he sometimes rode with Kody and Walker as they sold drugs from his car.

*Ardoin*, 750 F. App'x at 325-27.  The opinion contains a chart detailing the quantity of  drugs attributable to each defendant personally.  With regard to Kody, the court lists the following quantities attributed to him:   Seized and Tested Crack Cocaine–151.6g; Kristopher's 2010 Arrest–3.9g; Kody's Car Stop–5.5g; Broussard's testimony–63g; Roberson's testimony–255g; Walker's admissions–24g; Total–503g." *Id*. at 328.

In Part II of the opinion, the Fifth Circuit addressed the sentencing issues Ardoin now raises:

A.

> Kody disputes the 4.88 kilograms of crack cocaine the district court attributed to him in calculating his Guidelines range.  The sentencing judge's assessment of the drug quantity reasonably foreseeable to a defendant is reviewed for clear error.  *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013).

The Presentence Report attributed 4.92 kilograms[1] of crack cocaine to Kody based on witness testimony, traffic stops, officer surveillance, and search warrants. With two unremarkable exceptions, the report and the trial evidence present identical information. The judge relied on the PSR and attributed the slightly smaller amount to Kody.

Kody first argues this sentencing determination is at odds with the jury's attributing exactly 280 grams to him. This ignores the words "or more" in the question the jury answered.

He next argues that the judge attributed at least 2.8 kilograms of crack cocaine to him based on only "nebulous" officer surveillance operations. But the drug quantity derived from surveillance was based on the trial testimony of police officers, in particular one officer who saw 10-15 transactions per hour at 1107 Avenue A during his biweekly observations over five years. This testimony was sufficiently reliable to support the court's drug quantity finding. *See Valdez*, 453 F.3d at 267. We find no error in Kody's sentence.

III.     Challenged Portions of the PSR

In his motion, Ardoin challenges paragraphs 34, 35, and 45 of the final PSR.

Paragraph 34 states:

During the trial, three individuals testified about their experience regarding this conspiracy. One witness (Witness 1 for purposes of this report) said he saw Kristopher Ardoin meet with customers "hundreds" of times. As a conservative estimate, this could yield approximately 100 grams of "crack" cocaine. A second witness (Witness 2 for purposes of this report) estimated, according to his knowledge, **Kody Ardoin** and Walker, working together, were involved with approximately a fourth (.025) ounce of "crack" cocaine per day for a period of two to five months. A fourth ounce of "crack" cocaine is 7.08 grams. Considering

---

[1] The appellate court appears to overlook the fact that Paragraph 38 of the initial disclosure copy of the PSR dated May 15, 2017, which calculated 4.92 kilograms of crack cocaine attributable to the conspiracy, was revised after further investigation by Probation. In the final report dated July 20, 2017, Paragraph 38 states that "the conspiracy involved at least 4.88 kilograms of 'crack' cocaine." This change occurred when the estimated grams of crack cocaine attributed to officer traffic stops of customers were decreased from 60 grams to 12.6 grams.

two months (60 days), at 7 grams per day, results in approximately 420 grams. Additionally, Witness 2 was a runner for **Kody Ardoin**, and received directions from **Kody Ardoin** about how to run away with drugs if stopped by police officers. Furthermore, Witness 2 testified about how he had been held hostage by **Kody Ardoin** due to a drug debt. A third witness (Witness 3 for purposes of this report) testified he purchased "crack" cocaine from Kristopher Ardoin, **Kody Ardoin**, and Zerrick Walker, approximately 20 to 50 times each. Witness 3 also indicated **Kody Ardoin** had been in charge of the "trap" in January 2016 because Kerry Ardoin was in jail. Considering each purchase to be 1 gram, and considering 20 purchases from each of the three named defendants, results in 60 grams of "crack" cocaine. As such, these witnesses' testimonies reveal approximately 580 grams of "crack" cocaine associated with the conspiracy. These transactions are independent of transactions about which law enforcement officers testified, as they generally reflect transactions that occurred inside the "trap."

The Probation Officer who authored the PSR refers to this evidence as "Witness testimony" when discussed later in the PSR.

Paragraph 35 reads:

As to the surveillance and heavy foot traffic officers observed during the investigation of the Ardoins, an officer whose testimony has been previously referenced also testified he observed the residence twice a week every year since 2011, conducted approximately 400 surveillance operations, during which he observed approximately 10 to 15 people per hour going to the "trap." Considering 400 operations involving at least 10 people [per] hour, or per operation, purchasing approximately 1 gram each, results in 4,000 grams of "crack" cocaine. This amount is conservative as the officer who responded to hundreds of calls regarding the "trap," and about 2,000 calls to the neighborhood area overall. Additionally, another officer whose testimony has also previously been referenced testified he observed hand-to-hand transactions during his surveillance operations, and estimates having observed at least 100 grams of "crack" cocaine being sold from the "trap." Based on these officers' testimonies, they observed at least 4,100 grams of "crack" cocaine during their surveillance operations. These transactions are independent of transactions for which other testimony was presented, as they[2]

---

[2] Ardoin seems to misconstrue the word "they" as used in Paragraph 35 as referring to transactions that occurred outside the "trap" when it is clear by reading Paragraph 34 in conjunction with Paragraph 35 that "they" refers instead to the witness testimony summarized in Paragraph 34 that addresses transactions outside the "trap." Paragraph 35 refers to officer surveillance operations of events occurring inside the "trap." Thus, contrary to Ardoin's assertion in his motion, Paragraph 35 does not duplicate the drug amount testified to by witnesses in Paragraph 34.

only reflect hand-to-hand transactions for which other testimony was presented, as they only reflect hand-to-hand transactions occurring outside, and no action was taken by law enforcement officers as a result of the surveillance.

The Probation Officer who authored the PSR refers to this evidence as "Officer Surveillance Operations" when discussed later in the PSR.

Paragraph 38 of the PSR contains a summary of the calculations made by the Probation Officer as set forth in an accompanying table:

In summary, the conspiracy involved at least 4.88 kilograms of "crack" cocaine, as summarized in the following table. It is noted that estimates obtained from officers' testimonies and witnesses' testimonies are concentrated on conspiracy conduct during the period approximately four years before the date of indictment. Although the defendant is responsible for drugs throughout the entire period of the conspiracy, in formulating a reasonable estimate, the base offense level will be determined considering the period approximately four years before the date of indictment.

The table lists the following incidents and estimated grams of "crack" cocaine involved:

9/10/15: Search warrant of the "trap" and house next door (cocaine HCl intended to be cooked into "crack cocaine")—84 grams

Search warrants as testified by one officer—43 grams

Officer traffic stop of customers—12.6 grams

Witness testimony—580 grams

Officer surveillance operations—4,100 grams

Cash associated with **Kody Ardoin** (9/2/13 - 3.8 grams, and 6/18/14 - 28.7 grams)—32.5 grams

Total of the traffic stops involved **Kody Ardoin** (5/13/12 - 4.53 grams, 10/26/12 - 0.03 gram, 8/20/15 - 0.08 gram, and 3/26/16 - 25.15 grams)—29.79 grams

TOTAL—4,881.29 grams (4.88 kilograms)

Paragraph 45 states:

45.    **Adjustment for Role in the Offense:** Pursuant to USSG §3B1.1(b), if the defendant was a manager or supervisor, but not an organizer or leader, and the criminal activity involved five or more participants, the offense level is to be increased by three levels. A witness testified Kody Ardoin has been in charge of the "trap" when other Ardoin brothers were in custody. After many of the family members were arrested, Kody Ardoin was in charge of the "trap" at times. The defendant also gave instructions to those who assisted him with selling drugs, such as telling Witness 2 how to run from police officers. Furthermore, Witness 2 was a runner who worked at the direction of Kody Ardoin. At Kody Ardoin's direction, Walker would get drugs from the house next door to the "trap." Several people were involved with the conspiracy as listed in the Indictment. Specifically, the following individuals were directly associated with Kody Ardoin, in addition to his association with his brothers: (1) the defendant, (2) Witness 2, (3) Ashton Randolph, (4) Zerrick Walker, (5) Christopher Ooten, (6) Clifton Freeman, and (7) Witness 3. Therefore, the adjustment is appropriate.

Ardoin appears to suggest that the conclusions of the Probation Officer are not supported by the trial testimony and claims that "nobody was leader." This position was rejected by the trial court at sentencing, and the Fifth Circuit upheld Ardoin's sentence on appeal. Ardoin's disagreement with the holdings of the courts cannot be re-characterized as mere clerical error in a post-conviction motion.

IV.    Analysis

A.    Clerical Error

Ardoin styles his filing as a motion to correct clerical error under Rule 36 of the Federal Rules of Criminal Procedure. Rule 36 states: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." FED. R. CRIM. P. 36; *see United States v. Smith*, No. 24-50119, 2024 WL 4764275, at *1 (5th Cir. Nov. 13, 2024); *United States v. Willis*, 76 F.4th 467, 472 (5th Cir. 2023); *United States v. Raiford*, 593 F. App'x 383,

383 (5th Cir. 2015). "[T]he purpose of Rule 36 is 'only to correct mindless and mechanistic mistakes.'" *United States v. Cooper*, 979 F.3d 1084, 1089 (5th Cir. 2020) (quoting *United States v. Ramirez-Gonzalez*, 840 F.3d 240, 247 (5th Cir. 2016)); *accord United States v. Mackay*, 757 F.3d 195, 200 (5th Cir. 2014); *United States v. Phillips*, No. 13-286, 2022 WL 17415077, at *2 (E.D. La. Dec. 5, 2022). "A clerical error occurs when the court intends to do one thing but through clerical mistake or oversight does another." *Raiford*, 593 F. App'x at 383; *United States v. Hathorn*, 551 F. App'x 227, 227 (5th Cir. 2014) (citing *United States v. Buendia-Rangel*, 553 F.3d 378, 379 (5th Cir. 2008)); *accord United States v. Steen*, 55 F.3d 1022, 1026 n.3 (5th Cir. 1995). "'Where the record makes it clear that an issue was actually litigated and decided but was incorrectly recorded in or inadvertently omitted from the judgment, the district court can correct the judgment under' Rule 36." *Cooper*, 979 F.3d at 1089 (quoting *Ramirez-Gonzalez*, 840 F.3d at 247). "Rule 36 does not cover deliberate drafting choices." *Id.*; *Ramirez-Gonzalez*, 840 F.3d at 247. In addition, "Rule 36 may not be used to make a substantive alteration to a criminal sentence or to correct errors of law." *United States v. Calixte*, No. 23-12412, 2024 WL 4799712, at *1 (11th Cir. Nov. 15, 2024) (citing *United States v. Portillo*, 363 F.3d 1161, 1164 (11th Cir. 2004)). Thus, the power to correct a written judgment is limited under Rule 36. *United States v. Read*, 118 F.4th 1317, 1322 (11th Cir. 2024) (quoting *Portillo*, 363 F.3d at 1164-65.

Rule 36 is an "appropriate vehicle for changes that do not substantively alter the orally announced sentence but instead correct errors in the written judgment." *Illies*, 805 F.3d at 610 (citing *Spencer*, 513 F.3d at 491-92); *accord United States v. Bernardez-Avila*, 613 F. App'x 440, 440 (5th Cir. 2015). "If the in-court pronouncement differs from the judgment that later issues, what the judge said at sentencing controls." *United States v. Baez-Adriano*, 74 F.4th 292, 298

9

(5th Cir. 2023) (citing *United States v. Diggles*, 957 F.3d 551, 557 (5th Cir. 2020)); *accord United States v. Harris*, 960 F.3d 689, 696 (5th Cir. 2020); *see United States v. Brock*, 797 F. App'x 179, 180 (5th Cir. 2020) (quoting *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001)); *United States v. Ivy*, 735 F. App'x 151, 151 (5th Cir. 2018).  In contrast, when the written judgment accurately reflects the court's oral pronouncement at sentencing, however, the court has no authority to correct the defendant's sentence pursuant to Federal Rule of Criminal Procedure 36.  *Middleton*, 2022 WL 15089909, at *2 (citing *United States v. Castro*, No. C-99-289, 2011 WL 2412902, at *2 (S.D. Tex. June 15, 2011)); *see United States v. Roth*, 359 F. App'x 453, 454-55 (5th Cir. 2009) (denying motion under Rule 36 where the judgment is consistent with the court's verbal explanation of the sentence and does not contradict anything that the judge said at the sentencing hearing).  Here, Ardoin does not complain about a discrepancy between the court's oral pronouncement at sentencing and the written judgment.  Instead, he asserts that the PSR contains incorrect drug quantity calculations and improperly assigns him a managerial or supervisory role in a drug trafficking conspiracy.  This is not a situation, therefore, where the court or the probation officer intended to do one thing but through clerical error or oversight did another.

A pre-sentence report ("PSR") is "part of the record" within the meaning of Rule 36, and courts are required to correct a clerical error within a PSR if the error affects a defendant's "substantial rights."  *Mackay*, 757 F.3d at 200; *accord United States v. Smith*, No. 24-50119, 2024 WL 4764275, at *1 (5th Cir. Nov. 13, 2024); *Ramirez-Gonzalez*, 840 F.3d at 245.  Nevertheless, Rule 36 " is not a perpetual right to apply different legal rules or different factual analyses to a case.  It is only mindless and mechanistic mistakes . . . and no new additional legal

perambulations which are reachable through Rule 36." *Mackay*, 757 F.3d at 200. Changes to substantive material information within a PSR such as "sentencing guideline ranges" and "policy statements" should be made pursuant to Rule 32, not Rule 36. *Id*. at 199.

Here, the Probation Officer's calculation of drug quantities, determination of the applicable guideline range, and imposition of an adjustment when preparing the PSR do not constitute "mindless and mechanistic mistakes." *Mackay*, 757 F.3d at 200 (quoting *W. Tex. Mktg. Corp.*, 12 F.3d at 505). Rather, they reflect the Probation Officer's conclusions and assessments after a thorough investigation of the case and consideration of the evidence adduced at trial. A review of the record reveals that the Probation Officer followed the procedures set forth in Rule 32 of the Federal Rules of Criminal Procedure regarding the conduct of the presentence investigation and the preparation and disclosure of the PSR.

Rule 32(f) describes the procedure by which a defendant can object to factual or other inaccuracies in the PSR. *See* FED. R. CRIM. P. 32(f). This rule is designed to ensure that a defendant is not sentenced based on erroneous information. *United States v. Robilotto*, 867 F.2d 729, 730 (2d Cir. 1989); *Lyons v. Herrera*, No. 97-497, 2009 WL 6614611, at *18 (C.D. Cal. Oct. 2, 2009). Rule 32(f)(1) provides: "Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Under Rule 32(f)(2): "An objecting party must provide a copy of its objections to the opposing party and to the probation officer." Rule 32(f)(3) states: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Under Rule 32(g): "At

11

least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." At sentencing, the court must either "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing," and it "must append a copy of the court's determinations" to the report. *See* FED. R. CRIM. P. 32(i)(3)(B), (C); *Robilotto*, 867 F.2d at 730 (quoting *Ochoa v. United States*, 819 F.2d 366, 372 (2d Cir. 1987)); *accord United States v. Chee*, 514 F.3d 1106, 1114-15 (10th Cir. 2008).

In this case, the Probation Officer conducted an initial investigation and submitted a preliminary PSR on May 15, 2017. After Ardoin filed objections to the report, the Probation Officer performed further investigation, resolved some of the questions raised, and submitted a revised PSR on July 20, 2017. Ardoin filed additional objections to which the Probation Officer responded, and his lawyer addressed the objections at the sentencing hearing on August 24, 2017. The court considered the multiple objections advanced and overruled them, including one objection that would have been adverse to Ardoin and increased his criminal history category to a Level IV rather than a Level III, raising his guideline range to 360 years to life, which his attorney subsequently withdrew. When the court asked Ardoin if he would like to say something at sentencing, he declined and responded, "Straight. I'm straight. I don't got nothing to say." When his attorney inquired again, Ardoin stated, "No, I don't want to say nothing, judge." The court then sentenced Ardoin to 324 months's imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)), to be followed by 5 years of supervised release, as recommended by the Probation Officer.

Alleged substantive inaccuracies in Ardoin's PSR may not be raised at this juncture because "complaints regarding the contents of a [PSR] must be raised prior to the imposition of sentence." *United States v. Johnson*, 671 F. App'x 357, 358 (5th Cir. 2016) (citing *United States v. Engs*, 884 F. 2d 894, 895-97 (5th Cir. 1989)); *United States v. Alexander*, 353 F. App'x 885, 885 (5th Cir. 2009) (same); *accord United States v. Jones*, 628 F. App'x 189, 190 (4th Cir. 2016); *see United States v. Laureti*, 859 F. App'x 490, 492 (11th Cir. 2021) (upholding the district court's determination that it lacked authority to make substantive modifications to the defendant's PSR which were untimely raised in a post-judgment motion). Thus, the court can find no basis for exercising its jurisdiction over this matter. *See Key v. United States*, No. 3:12-CV-1771-O, 2013 WL 4409647, at *2 (N.D. Tex. Aug. 16, 2013) (holding the court had no jurisdiction over a defendant's request raised in a post-judgment motion seeking correction of alleged substantive inaccuracies in a specific section of the defendant's PSR). Therefore, Ardoin has no basis for relief due to his assertion of clerical error pursuant to Rule 36 of the Federal Rules of Criminal Procedure.

B.    Clear Error

Ardoin also cannot avail himself of the "clear error" provision of Rule 35(a) of the Federal Rules of Criminal Procedure. Rule 35(a) provides: "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." FED. R. CRIM. P. 35(a). "Rule 35(a)'s 'time limit is jurisdictional and strictly construed.'" *United States v. Willis*, 76 F.4th 467, 472 (5th Cir. 2023) (quoting *United States v. Coe*, 482 F. App'x 957, 957 (5th Cir. 2012)). "The court may not extend the time to take any action under Rule 35 . . . ."

*United States v. Thompson*, 417 F. App'x 429, 432 n.2 (5th Cir. 2011) (quoting FED. R. CRIM. P. 45(b)(2)).

The Fifth Circuit has interpreted "clear error" in Rule 35(a) to mean the sort of error that is unsupportable on appeal. *See United States v. Aguirre*, No. 22-10368, 2023 WL 5032507, at *3 (5th Cir. Aug. 8, 2023). "The narrow authority of the sentencing court to act under Rule 35(a) extends solely to 'cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action.'" *United States* v. *Olarte-Rojas*, 820 F.3d 798, 803-04 (5th Cir. 2016) (quoting FED. R. CRIM. P. 35 advisory committee's note); *accord United States v. Ross*, 557 F.3d 237, 241 (5th Cir. 2009). "Rule 35(a) is not designed for the court to reconsider the application or interpretation of the [sentencing] [g]uidelines or to change its mind about the propriety of a sentence, and should not be used to reopen issues previously resolved at sentencing 'through the exercise of the court's discretion with regard to the application of the sentencing guidelines.'" *Olarte-Rojas*, 820 F.3d at 804) (quoting FED. R. CRIM. P. 35 advisory committee's note); *accord Willis*, 76 F.4th at 472; *Ross*, 557 F.3d at 240-41. "Misgivings about 'the leniency or severity of the sentence' are not the type of error contemplated by Rule 35(a)." *Olarte-Rojas*, 820 F.3d at 804 (citing *Ross*, 557 F.3d at 239).

In sum, Ardoin's motion does not identify any arithmetical, technical, or similar errors with his sentence. *See United States v. Rakhmatov*, 53 F.4th 258, 261 (2d Cir. 2022). He merely alleges that the court failed to use the proper drug quantities to assess his offense level and to apply the proper sentencing factors to enhance his sentence. In fact, the arguments made in his motion are the same that were considered and rejected by the court during the sentencing hearing.

14

Thus, the alleged errors do not fall within the narrow scope of Rule 35(a).  Most importantly, the final judgment against Ardoin was entered on August 25, 2017.  Ardoin's current motion was filed on November 21, 2025, more than eight years later, which is well outside the 14-day post-judgment period allowed to raise the "clear error" provision of Rule 35(a).  Thus, even if Ardoin is correct that the court erred in calculating his sentence, the motion is untimely.  The time for correcting any calculation that constituted clear error has long passed.  *See United States v. Rodriguez-Flores*, NO. 2:05-CR-21-KS-MTP, 2025 WL 2412338, at *2 (S.D. Miss. Aug. 20, 2025).  Thus, Ardoin is not entitled to relief under Rule 35(a) of the Federal Rules of Criminal Procedure.

V.    Conclusion

Ardoin's belated motion seeking to correct alleged errors in his sentence is without merit.  Neither Rule 36, Rule 35(a), nor Rule 32 of the Federal Rules of Criminal Procedure provides an avenue for Ardoin to change or lessen his sentence at this juncture.  Accordingly, consistent with the foregoing analysis, Ardoin's Emergency Motion to Correct Clerical Error Under Federal Rule Criminal Procedure 36 (#840) is DENIED.

SIGNED at Beaumont, Texas, this 19th day of February, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

15