**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:15-CR-119(5) |
| | § | |
| KODY DWAYNE ARDOIN | § | |

## MEMORANDUM AND ORDER

Pending before the court for reconsideration is Defendant Kody Dwayne Ardoin's ("Ardoin") § 3582(c)(1)(A) Motion seeking compassionate release/reduction in sentence (#802). The Government previously filed a response in opposition to Ardoin's motion (#803). On February 23, 2026, the Government filed a response to Ardoin's Motion for Reconsideration (#851), which contains a supplemental response to the compassionate release/reduction in sentence motion.[1] United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the Government's responses, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

---

[1] The court previously denied Ardoin's motion for failure to exhaust his administrative remedies because he made no mention and gave no indication in his motion that he had attempted to exhaust his administrative remedies and there was no evidence before the court that he had sought relief from the warden or other BOP personnel. Further, counsel for the Government "attest[ed] that the BOP has no records in its possession supporting the proposition that Ardoin has exhausted his administrative remedies." (#828). Ardoin subsequently filed a motion for reconsideration (#845) in which he stated that he had sought an administrative remedy while confined at Federal Correctional Institution Big Spring ("FCI Big Spring"), which the warden denied. He attached a copy of the warden's response dated September 17, 2024. The warden's response references an Inmate Request to Staff dated September 5, 2024, and addresses allegations of "the wrong criminal history, a charge of 4,100 grams of 'speculation drugs,' and a charge with a leadership role based off of false statements." The court ordered the Government to respond to Ardoin's motion for reconsideration and to include a copy of the Inmate Request to Staff dated September 5, 2024 (#846), which the court subsequently received. The court granted Ardoin's motion for reconsideration on February 23, 2026 (#852), and his Motion for Compassionate Release/Reduction in Sentence (#802) was reinstated. The court now reconsiders its prior ruling.

I.    Background

On May 4, 2016, a federal grand jury in the Eastern District of Texas returned a four-count Third Superseding Indictment (#52) charging Ardoin in Count One with Conspiracy to Possess With Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846.  He was not named in the remaining three counts.   On January 25, 2017, following a three-day trial, a jury returned a guilty verdict against Ardoin as to Count 1 of the Third Superseding Indictment.  Subsequently, on October 2, 2017, the court sentenced Ardoin to 324 months' imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)).  On September 28, 2018, the United States Court of Appeals for the Fifth Circuit affirmed Ardoin's conviction and sentence. *See United States v. Walker*, 750 F. App'x 324 (5th Cir. 2018).  He did not seek a writ of certiorari from the Supreme Court of the United States.  On April 11, 2019, Ardoin filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  On August 30, 2021, the court entered Final Judgment dismissing the motion without prejudice, which Ardoin did not appeal to the Fifth Circuit.  On January 17, 2025, former President Joseph Biden accorded Ardoin an Executive Grant of Clemency, which reduced his sentence to 180 months' imprisonment (#813).

Ardoin seeks compassionate release/reduction in sentence contending that various sentencing errors violated his right to due process of law:  (1) an enhancement that increased his offense level by 3 points for having a leadership role in the drug conspiracy; (2) categorizing his criminal history as Category III rather than Category II; and (3) being held accountable for 4,881 grams of cocaine base that should not have been attributed to him because 4,620 grams were "unreliable."  Ardoin is currently housed at Federal Correctional Institution Manchester ("FCI

2

Manchester"), located in Manchester, Kentucky, with a projected release date of February 8, 2029.

II.    Nature and Circumstances of the Offense of Conviction

The Fifth Circuit summarized the facts of Ardoin's offense of conviction in its opinion affirming the verdict and sentence, stating:

> For about two decades, the home at 1107 Avenue A in Beaumont was the headquarters of a family-operated business. Crack cocaine was the product. The operation included the mother and father, their five sons, several cousins, and other family friends. Local police would occasionally make arrests, and some family members served time on state charges, but others would quickly pick up the slack and continue the operation. Taking a new approach, a federal investigation led to a grand jury indictment of thirteen people for conspiring to distribute 280 grams or more of crack cocaine between January 2006 and May 2016. Six were also charged with conspiring to possess firearms in furtherance of the drug trafficking.
>
> Three defendants went to trial: two of the sons, Kristopher and Kody Ardoin, and one of the cousins, Zerrick Walker. All three faced the drug conspiracy charge. Only Kristopher was charged with the firearm conspiracy. The jury found them guilty on all counts, attributing 280 grams or more of crack to both the drug conspiracy and each defendant individually. The district court sentenced Kody to 27 years, Walker to a mandatory minimum of 20 years, and Kristopher to concurrent sentences of mandatory life for the drug offense and 20 years for the firearms conviction.
>
> * * *
>
> *Evidence about the conspiracy generally.* Numerous people in the community told police about buying crack at 1107 Avenue A. A constant stream of people entered and exited the house, perhaps as many as 15 an hour, and the two-block surrounding area received hundreds of disturbance calls. Police found crack in the house (among other drugs and paraphernalia) while executing four different search warrants, seizing 151.6 grams in the investigation. One witness bought crack from each of the defendants between 20-50 times after he began using in 2013.
>
> ***
>
> *Evidence specific to Kody.* Witnesses also observed Kody repeatedly engaging in hand-to-hand drug transactions. He was present when police found crack cocaine during three searches of 1107 Avenue A. When police found crack after searching

> another house a block away, Kody was again at he scene. After one arrest, Kody informed an officer that he had hidden crack in his anal cavity; when recovered it weighed about 5.5 grams. A customer said he had observed Kody with as much as 28 grams of crack cocaine on one occasion. Another explained that Kody "rented" his car in exchange for crack cocaine for five months, giving him about an ounce a week (about 28.3 grams), an amount Kody later told him was worth more than $20,000. This witness noted that he sometimes rode with Kody and Walker as they sold drugs from his car.

*Ardoin*, 750 F. App'x at 325-27. The opinion contains a chart detailing the quantity of drugs with which each defendant was personally involved. With regard to Kody, the court lists the following quantities attributed to him: Seized and Tested Crack Cocaine–151.6g; Kristopher's 2010 Arrest–3.9g; Kody's Car Stop–5.5g; Broussard's testimony–63g; Roberson's testimony–255g; Walker's admissions–24g; Total–503g." *Id*. at 328.

In Part II of the opinion, the Fifth Circuit addressed the sentencing issue regarding the quantity of crack cocaine that Ardoin now raises:

> Kody disputes the 4.88 kilograms of crack cocaine the district court attributed to him in calculating his Guidelines range. The sentencing judge's assessment of the drug quantity reasonably foreseeable to a defendant is reviewed for clear error. *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013).

> The Presentence Report attributed 4.92 kilograms[2] of crack cocaine to Kody based on witness testimony, traffic stops, officer surveillance, and search warrants. With two unremarkable exceptions, the report and the trial evidence present identical information. The judge relied on the PSR and attributed the slightly smaller amount to Kody.

---

[2] The appellate court appears to overlook the fact that Paragraph 38 of the initial disclosure copy of the Presentence Investigation Report ("PSR") dated May 15, 2017, which calculated 4.92 kilograms of crack cocaine attributable to the conspiracy, was revised after further investigation by Probation. In the final report dated July 20, 2017, Paragraph 38 states that "the conspiracy involved at least 4.88 kilograms of 'crack' cocaine." This change occurred when the estimated grams of crack cocaine attributed to officer traffic stops of customers were decreased from 60 grams to 12.6 grams.

Kody first argues this sentencing determination is at odds with the jury's attributing exactly 280 grams to him. This ignores the words "or more" in the question the jury answered.

He next argues that the judge attributed at least 2.8 kilograms of crack cocaine to him based on only "nebulous" officer surveillance operations. But the drug quantity derived from surveillance was based on the trial testimony of police officers, in particular one officer who saw 10-15 transactions per hour at 1107 Avenue A during his biweekly observations over five years. This testimony was sufficiently reliable to support the court's drug quantity finding. *See Valdez*, 453 F.3d at 267. We find no error in Kody's sentence.

*Id*. at 329.

Paragraph 38 of the PSR also contains a summary of the calculations made by the Probation Officer as set forth in an accompanying table:

In summary, the conspiracy involved at least 4.88 kilograms of "crack" cocaine, as summarized in the following table. It is noted that estimates obtained from officers' testimonies and witnesses' testimonies are concentrated on conspiracy conduct during the period approximately four years before the date of indictment. Although the defendant is responsible for drugs throughout the entire period of the conspiracy, in formulating a reasonable estimate, the base offense level will be determined considering the period approximately four years before the date of indictment.

The table lists the following incidents and estimated grams of "crack" cocaine involved:

9/10/15: Search warrant of the "trap" and house next door (cocaine HCl intended to be cooked into "crack cocaine")—84 grams
Search warrants as testified by one officer—43 grams
Officer traffic stop of customers—12.6 grams
Witness testimony—580 grams
Officer surveillance operations—4,100 grams
Cash associated with **Kody Ardoin** (9/2/13 - 3.8 grams, and 6/18/14 - 28.7 grams)—32.5 grams
Total of the traffic stops involving **Kody Ardoin** (5/13/12 - 4.53 grams, 10/26/12 - 0.03 gram, 8/20/15 - 0.08 gram, and 3/26/16 - 25.15 grams)—29.79 grams
TOTAL—4,881.29 grams (4.88 kilograms)

The court previously addressed the calculation of drug quantity in its Memorandum and Order Denying Ardoin's Emergency Motion to Correct Clerical Error Under Federal Rule Criminal Procedure 36 (#850) and rejected Ardoin's challenge.

III.     Compassionate Release

A.     Overview

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[3] to the extent that they are applicable, if it finds that—

---

[3] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other

courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release or a sentence reduction on his own motion must satisfy the following hurdles:

(1)     the defendant must have exhausted his administrative remedies;

(2)     "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)     the reduction must be consistent with the Commission's applicable policy statements; and

(4)     the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule."  *Franco*, 973 F.3d at 468.  "Mandatory but nonjurisdictional procedural filing requirements may be waived."  *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*,

No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025).  Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived.  *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release.  *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, 2025 WL 1840598, at *2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La. Aug. 19, 2022).  Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement.  *Avelar*, 2022 WL 17096173, at *2 (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020) (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter)).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed.  *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the

BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)).  "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider."  *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at *2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)).  Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent.  *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020);  *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release."  *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2.  "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court."  *DeJean*, 2025 WL 3687269, at *3.  Successive

compassionate release motions must independently satisfy the exhaustion requirement. *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021). "If a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

Here, Ardoin has exhausted his administrative remedies. On September 5, 2024, he submitted a request for reduction in sentence to the warden of the facility where he was housed at the time. In his request, he stated:

> I would like reduction in sentence or compassnate [sic] release on 3 grounds:
>
> 1. I was sentence[d] in wrong criminal history
>
> 2. I was charge[d] with 4,100 grams speculation drugs
>
> 3. I was charge[d] with a leadership role in case off false statements.

On September 17, 2024, Warden C. Humphrey denied Ardoin's request, explaining that "[t]he circumstances you requested to be reviewed do not meet the criteria listed in BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4505(g) [sic]. The warden elaborated:

> You do not present any extraordinary or compelling reasons stated above. You are 29 years old, you do not have a terminal, incurable disease with a life expectancy of 18 months or less, you do not have a debilitating medical condition, and you do not have the death or incapacitation of the family caregiver of your child, or the incapacitation of your spouse or registered partner.
>
> Based on the above-stated information, you are not eligible for compassionate release/reduction in sentence (RIS) consideration at this time.

Nevertheless, while Ardoin may have complied with the exhaustion requirement before filing his motion for compassionate release/sentence reduction, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement or reduce his sentence of imprisonment.

     C.     <u>Analysis of Claims</u>

     1.     <u>Leadership Role</u>

Ardoin challenges the 3-point offense level enhancement attributed to him pursuant to U.S.S.G. §3B1.1 for having a managerial or supervisory role in the drug-trafficking conspiracy described above which involved five or more participants. U.S.S.G. §3B1.1(b) specifies, "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." Although Ardoin objected to the enhancement at sentencing, he did not raise this claim in his appeal to the Fifth Circuit, which affirmed his sentence, including the 3-level enhancement of his offense level for serving as a manager or supervisor of the drug-trafficking conspiracy. In his current motion, Ardoin asserts that the resulting sentence violated his due process right not to be sentenced based on false or unreliable information, claiming that the transcript shows "nobody took lead."

Paragraph 45 of the PSR addresses the 3-level sentencing enhancement imposed for Ardoin's managerial or supervisory role in the offense:

> 45.    **Adjustment for Role in the Offense:** Pursuant to USSG §3B1.1(b), if the defendant was a manager or supervisor, but not an organizer or leader, and the criminal activity involved five or more participants, the offense level is to be increased by three levels. A witness testified Kody Ardoin has been in charge of the "trap" when other Ardoin brothers were in custody. After many of the family members were arrested, Kody Ardoin was in charge of the "trap" at times. The defendant also gave instructions to those who assisted him with selling drugs, such as telling Witness 2 how to run from

police officers.  Furthermore, Witness 2 was a runner who worked at the direction of Kody Ardoin.  At Kody Ardoin's direction, Walker would get drugs from the house next door to the "trap."  Several people were involved with the conspiracy as listed in the Indictment.  Specifically, the following individuals were directly associated with Kody Ardoin, in addition to his association with his brothers:  (1) the defendant, (2) Witness 2, (3) Ashton Randolph, (4) Zerrick Walker, (5) Christopher Ooten, (6) Clifton Freeman, and (7) Witness 3.    Therefore, the adjustment is appropriate.

At sentencing, the court overruled Ardoin's objections to the enhancement, finding that there was sufficient evidence to support the increase in the offense level.  Contrary to his assertion, Ardoin was not found to be the leader of the conspiracy—rather, he was found to have a managerial or supervisory role.  This was based on Ardoin's running the trap house in 2016 after his brothers were arrested and at other times along with his directing the activities of others, including Witness 2, Ashton Randolph, Zerrick Walker, Christopher Ooten, Clifton Freeman, and Witness 3, on a number of occasions.  Various witnesses testified about receiving instructions from him.  For example, as reflected in Paragraph 34 of the PSR, "Witness 2 was a runner for Kody Ardoin, and received directions from Kody Ardoin about how to run away with drugs if stopped by police officers.  Furthermore, Witness 2 testified about how he had been held hostage by Kody Ardoin due to a drug debt."  The Government pointed out at sentencing that once Ardoin was arrested after the execution of a search warrant in 2016 and he was taken off the street, the trap house shut down.  The prosecutor noted, "So him coming off the street – and he got indicted shortly thereafter – seems to have shut down the house, which means that he played a significant role in that in and of itself."  Ultimately, Ardoin's current argument regarding the increase in his offense level for having a leadership role was rejected by the trial court at sentencing, he did not raise the issue in his appellate brief, and the Fifth Circuit upheld Ardoin's sentence on appeal.

14

Ardoin now makes no showing that the sentence enhancement was based on false or unreliable information.  Hence, the court finds no reason to disturb this finding in connection with Ardoin's post-conviction motion for compassionate release/reduction in sentence, as it is consistent with the evidence presented at trial.

### 2.    Criminal History Category

Ardoin maintains that he was "put in wrong catagory[sic]," claiming that he should have been determined to be a Criminal History Category II, rather than a Category III.  He complains that he was sentenced on the same day, January 13, 2014, for three prior misdemeanors for which he received 90 days in jail that ran concurrently.  Ardoin was assessed 2 criminal history points each for two of the offenses.  He asserts that these sentences should have been treated as a single sentence because they were imposed on the same day.

Ardoin did not object to the calculation of his criminal history points at trial and did not raise this issue on appeal.  He now belatedly claims he should have been placed in Criminal History Category II, which, when considered in connection with an Offense Level of 36 (apparently based on his argument regarding the 3-level enhancement), would have yielded a sentencing range of 210-262 months, rather than the range applied at sentencing, 324-405 months, for an Offense Level of 39 with a Criminal History Category of III.

U.S.S.G. §4A1.2, entitled "Definitions and Instructions for Computing Criminal History," sets forth directions for the computation of criminal history in cases that involve prior sentences. As provided in §4A1.2(a)(1), "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense."  Section 4A1.2(a)(2) states:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). For purposes of this provision, a traffic stop is not an intervening arrest. If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by subparagraph (A) or (B) as a single sentence. *See also* §4A1.1(d).

Here, each of Ardoin's three prior misdemeanor offenses was separated by an intervening arrest.

Ardoin was arrested on May 14, 2012, for possession of marijuana. He pleaded guilty to the offense and was sentenced on January 13, 2014, to 90 days in jail. Because this conviction was considered relevant conduct to the instant federal offense, no criminal history points were assessed. Ardoin was arrested again on May 16, 2012, for trespassing at a vacant house with a posted "no trespassing" sign. He pleaded guilty to the offense and was sentenced on January 13, 2014, to 90 days in jail. He was assessed 2 criminal history points for this offense because the offenses were separated by the intervening arrest on May 16, 2012, as he was arrested for the first offense prior to committing the second offense. Ardoin was arrested once again on June 8, 2013, for evading detention when he fled to avoid arrest on an outstanding warrant. He pleaded guilty to this offense and was sentenced on January 13, 2014, to 90 days in jail. He was assessed 2 criminal history points for this offense because the latter two offenses were separated by the intervening arrest on June 8, 2013, as he was arrested for the second offense prior to committing the third offense. Therefore, although he was sentenced on the same day for all three offenses, the offenses were properly counted separately because there were intervening arrests. Hence, Ardoin's Criminal History Category of III as calculated in the PSR is correct. Accordingly, Ardoin's claim based on the calculation of his Criminal History Category is without merit.

3.    Drug Quantity

Ardoin complains that the was held accountable for 4,881 grams of cocaine base at sentencing.  He seeks a reduction in sentence on the grounds that 4,620 grams were unreliable under case law and the U.S.S.G. Manual.  On appeal, the Fifth Circuit addressed Ardoin's challenges to the calculation in some detail and rejected his claims.  As set forth above in Section II, the appellate court reviewed the calculations carefully and found that the testimony presented at trial was sufficiently reliable to support the trial court's drug quantity finding and found no error in Ardoin's sentence.  Ardoin did not seek a writ of certiorari to challenge the calculation of the drug quantity at the Supreme Court.  Contrary to his contentions, Ardoin has not adduced sufficient evidence to dispute the courts' findings via a post-conviction motion for sentence reduction.  "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue."  *United States v. Valdez,* 453 F.3d 252, 262 (5th Cir. 2006) (quoting *United States v. Valencia,* 44 F.3d 269, 274 (5th Cir. 1995)); *accord United States v. Barfield*, 941 F.3d 757, 763 (5th Cir. 2019).  Ardoin has not met his burden.

As set forth above, the Probation Officer provided extensive information in the PSR regarding the calculation of drug quantity, which both the district court and the appellate court utilized.  Beaumont police officers testified about the frequent surveillance performed at the Ardoin residence on Avenue A over the years, including one officer who conducted surveillance once a week for an extended period of time and another officer who conducted surveillance twice a week.  Other officers testified about responding to numerous, even hundreds, of calls for service involving drugs and/or firearms at that location for a number of years.  Other witnesses included individuals who bought drugs at the Ardoin residence, rented a car to Ardoin in exchange for

crack cocaine for four to five months, and assisted or took directions from Ardoin regarding his drug-trafficking activities.  Moreover, when calculating a base offense level for a drug offense, district courts may extrapolate from reliable information and convert an amount of money into an approximate drug quantity.  *United States v. Garcia*, No. 24-40658, 2026 WL 66857, at *4-5 (5th Cir. Jan. 8, 2026) (citing *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020); *Barfield*, 942 F.3d at 762)).  Courts may also consider estimates of the quantity of drugs involved in the offense. *Id.* at * 4 (citing *Barry*, 978 F.3d at 218).  Testimony of a coconspirator regarding non-exact estimates will even suffice.  *See United States v. Alford*, 142 F.3d 825, 832 (5th Cir. 1998).  In sum, "[w]hen determining the drug quantity, the district 'court may extrapolate . . . from any information that has sufficient indicia of reliability to support its probable accuracy.'"  *Garcia*, 2026 WL 66857, at * 4 (quoting *Barfield*, 941 F.3d at 762).  In this instance, as the Fifth Circuit found, there was more than adequate evidence to substantiate the drug quantity calculation and there was no error in Ardoin's sentence.

D.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v.*

18

*Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  Here, neither the nature of Ardoin's offense nor his history and characteristics warrant a sentence reduction.

Ardoin's offense of conviction entails his participation in a multi-year, drug-trafficking conspiracy involving the distribution of approximately 4.88 kilograms of cocaine.  Ardoin routinely sold multiple-gram quantities of cocaine base from a family home located in Beaumont, Texas, which was known as a "trap house."  Ardoin was present during searches of the residence in 2012, 2015, and 2016 that yielded contraband including crack cocaine and drug paraphernalia.  In addition, Ardoin played a supervisory or managerial role in the conspiracy.

At the time of sentencing, Ardoin's criminal history included prior convictions for possession of marijuana, possession of a controlled substance (cocaine) (2x), trespassing, and evading detention.  His probation was revoked in one of the cases when he failed to comply with the conditions of his release, and he was sentenced to 2 years' imprisonment.  Ardoin also had six prior arrests for possession of cocaine and a history of marijuana use.  Since being incarcerated for his offense of conviction, Ardoin has incurred a number of prison disciplinary violations, some quite recently.  On February 18, 2026, he was cited for being unsanitary or untidy and lost 30 days of commissary privileges, and on January 9, 2026, he was found guilty of disruptive conduct when he appeared high, causing him to lose good conduct time, forfeit non-vested good conduct time, and lose commissary and email privileges.  On December 28, 2025, Ardoin was cited for refusal to obey an order and lost commissary privileges, and on September 16, 2025, he was absent from an assignment and lost commissary, email, phone, and tablet privileges.  On June 29,

2025, he refused to stand for count and lost good conduct time, and on June 26, 2025, he refused to obey an order which led to the loss of phone privileges. On June 23, 2025, Ardoin was found guilty of refusing a work/program assignment and refusing to obey an order for which he lost commissary and visitation privileges.  Ardoin was found to have engaged in disruptive conduct on June 9, 2025, which led to the loss of good conduct time as well as commissary, phone, and visitation privileges, and he also refused a work/program assignment for which he lost phone privileges.  On October 16, 2024, he was sanctioned for being absent from assignment and lost email privileges.   On May 19, 2021, Ardoin was found to have engaged in phone abuse/disrupt monitoring for which he lost good conduct time and phone privileges.  On January 24, 2020, he was cited for disruptive conduct likely stemming from the use of drugs for which he lost good conduct time and email privileges, was assessed a monetary fine, and was placed in disciplinary segregation.  On January 23, 2020, he interfered with staff and lost email privileges.  Ardoin was found to have engaged in disruptive conduct on November 19, 2019, for which he lost good conduct time as well as commissary and visitation privileges, and he was placed in disciplinary segregation.  He was cited for failing to stand count on both October 30, 2019, for which he lost phone privileges, and October 28, 2019, for which he lost commissary privileges.  On September 17, 2018, Ardoin was sanctioned for possessing an unauthorized item, lying or falsifying a statement, and interfering with staff for which he lost phone privileges.  Hence, Ardoin has an extensive and troublesome prison disciplinary record which gives no indication that he would abide by the law or comply with the conditions of supervised release if he were released from custody at this time.  In essence, Ardoin continues to pose a danger to the community.

Moreover, courts have long recognized that continued drug dealing, like that in which Ardoin engaged for years, constitutes a danger and threat to the community. *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *see United States v. Grimaldo*, No. 4:08-cr-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate release to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No. 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))).

"[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release to the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, but deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and

the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has a criminal history and a number of prison disciplinary violations, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").

In *United States v. McKinney*, the court denied relief to a prisoner who had end-stage renal failure and had a portion of his foot amputated despite the Government's concession that the defendant had established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i), finding that "granting compassionate release would not comport with the factors enumerated in Section 3553(a)." No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La. Apr. 18, 2023). In view of Ardoin's conviction of a serious drug offense, his criminal history, his violation of a previous term of probation, his repeated failures to comply with prison disciplinary rules, and the already generous reduction in sentence he received from his grant of clemency, a further reduction in sentence would not equate to a "just punishment" under § 3553(a)(2)(A). As the *McKinney* court expounded: "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect for

22

the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant." *Id.* at *3. This court holds the same belief in the case at bar. Thus, in light of the nature and circumstances of his offense of conviction, his criminal history, his history of substance abuse, and his repeated failure to comply with prison rules, the court cannot conclude that Ardoin's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. On balance, compassionate release is not warranted in this case in light of the applicable factors set forth in § 3553(a).

IV.    Improper Remedy

In his motion, Ardoin challenges his conviction and sentence, including the application of a sentence enhancement for his role in the offense of conviction, the calculation of the quantity of drugs involved in the offense, and the determination of his criminal history category. Ardoin's arguments constitute nothing more than an attempt to revisit determinations made years ago at the time of his sentencing in 2017. Yet, a "compassionate release motion 'is not an opportunity to second guess or to reconsider' the sentencing court's original decision." *United States v. Jabateh*, No. CR 18-216-3, 2021 WL 5802493, at *2 (W.D. Pa. Dec. 7, 2021) (quoting *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020)); *cf. United States v. Jones*, No. 24-30236, 2025 WL 1232927, at *6 (5th Cir. Apr. 29, 2025) (noting that a § 3582(c)(2) motion "is simply a vehicle through which appropriately sentenced prisoners can urge the court to exercise leniency to give certain defendants the benefits of an amendment to the Guidelines" (quoting *United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995))). Ardoin does not allege that "extraordinary and compelling reasons" warrant a reduction in his sentence or compassionate release due to some

severe exigency, not foreseeable at the time of sentencing, and unique to his life.  *See Chambliss*, 948 F.3d at 693.  He does not seek relief based on a serious medical condition, his age, his family circumstances, an outbreak of disease within the prison, his abuse while in prison, or other reasons of similar gravity within the purview of 18 U.S.C. § 3582(c)(1).  In fact, as the Government points out, his claims are entirely misplaced in this context.  Ardoin's claims are instead "the province of direct appeal or a § 2255 motion, not a compassionate release motion." *Escajeda*, 58 F.4th at 187.

The Fifth Circuit has explicitly held that "a prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence." *Id.*; *accord United States v. Corrales*, No. 23-50609, 2024 WL 448350, at *1 (5th Cir. Feb. 6, 2024).  The Fifth Circuit joined several other federal courts of appeal in reaching that result.  *See United States v. Jenkins*, 50 F.4th 1185, 1202 (D.C. Cir. 2022); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022); *United States v. Hunter*, 12 F.4th 555, 567 (6th Cir. 2021).  More recently, additional courts of appeal have reached the same conclusion.  *See United States v. Fernandez*, 104 F.4th 420, 430-31 (2d Cir. 2024), *cert. granted*, 145 S. Ct. 2731 (2025); *United States v. Holland*, No. 23-2157, 2023 WL 6249910, at *2 (3d Cir. Sept. 26, 2023); *United States v. Wesley*, 60 F.4th 1277, 1289 (10th Cir. 2023); *United States v. Ferguson*, 55 F. 4th 262, 272 (4th Cir. 2022).  As the court elaborated in *Escajeda*:

> Section 3582(c)(1)'s authorization for compassionate release stands in contradistinction to other statutes that Congress passed to govern prisoners' post-conviction proceedings.  In Chapter 153 of Title 28, Congress provided specific avenues for post-conviction relief that permit prisoners to challenge the legality of their confinement in federal court.  *See, e.g.*, 28 U.S.C. §§ 2241, 2244, 2254, 2255.  The Supreme Court has repeatedly held that by codifying these specific provisions, Congress *required* prisoners to bring their legality-of custody

challenges under Chapter 153 and *prohibited* prisoners from bringing such claims under other, more-general statutes like 42 U.S.C. § 1983.

58 F.4th at 186-87. This "habeas-channeling rule" likewise "forecloses using compassionate release to correct sentencing errors." *Id.* at 187 (quoting *Jenkins*, 50 F.4th at 1202). Chapter 153 of Title 28 contains the exclusive avenues for prisoners to bring their legality-of-custody challenges. *Escajeda*, 58 F.4th at 186-87 (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005); *Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973)). "[A] prisoner cannot use § 3582(c) to challenge the legality or the duration of his sentence; such arguments can, and hence must, be raised under Chapter 153." *Escajeda*, 58 F.4th at 187; *accord United States v. Cardenas*, No. 19-40425, 2024 WL 615542, at *2 (5th Cir. Feb. 14, 2024); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023).

Following his trial and conviction, Ardoin filed an appeal raising some of the claims he now asserts, but the Fifth Circuit affirmed his conviction and sentence in 2018. He did not file a petition for a writ of certiorari seeking review by the Supreme Court, and his conviction and sentence became final in January 2019. Ardoin filed a timely Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on April 11, 2019, in which he raised two claims of ineffective assistance of trial counsel. *See Ardoin v. United States*, No. 1:19-cv-180-MAC-ZJH (#1). He claimed that "[d]efense counsel was ineffective in bringing collateral challenge to a materially false and unreliable Presentence Investigation Report which served as basis to sentencing" and "[d]efense [c]ounsel was ineffective in bringing a collateral challenge to the meeting of [S]entencing Guidelines Manual Policy objectives where a firearm and leadership role enhancements were assessed." On August 19, 2021, Ardoin filed a document entitled Letter

Motion to Cancel Civil Action No. 1:19-CV-180 under § 2255 (#10).  He explained, "the federal prisoner wishes to persue [sic] other avenues to claim his innocence under a new petition."  On August 30, 2021, the court granted Ardoin's letter motion and dismissed his § 2255 motion without prejudice (#12).  Ardoin, however, did not timely file a subsequent Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 nor did he appeal the court's order of dismissal.  Under 28 U.S.C. § 2255(f)(1), the prisoner has a one-year limitation period for the filing of such a motion, calculated from the date on which the judgment of conviction became final, which in this case occurred in January 2019.  Therefore, Ardoin's belated attempts in 2025 to file such a motion or to amend his prior motion (#'s 35, 36) were clearly time-barred and were denied (#38).  At this time, the deadline for Ardoin to file another Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 expired years ago and any additional filings in that regard would be fruitless.

It has long been recognized that "the principle of finality . . . is essential to the operation of our criminal justice system."  *Teague v. Lane*, 489 U.S. 288, 309 (1989).  Indeed, as the Supreme Court has observed, "a final judgment commands respect."  *United States v. Frady*, 456 U.S. 152, 165 (1982).  "Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted."  *Id*. at 164.  Appreciating the importance of finality, Justice Harlan stated in his concurring opinion in *Mackey v. United States*:

> No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.

401 U.S. 667, 691 (1971).  This principle of finality forecloses Ardoin's current endeavor to circumvent the limitations on post-conviction relief by challenging determinations made long ago at sentencing under the guise of a compassionate release motion where his conviction and sentence were affirmed on appeal in 2018 and his habeas motion was dismissed in 2021 and was not appealed.

V.    Conclusion

Accordingly, to the extent Ardoin's claims under 18 U.S.C. § 3582(c)(1)(A) are cognizable in this context, he has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The sentence imposed upon Ardoin for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or justify his release from prison at this time.

Therefore, consistent with the foregoing analysis, Ardoin's Motion for Compassionate Release/Reduction in Sentence (#802) is DENIED.

SIGNED at Beaumont, Texas, this 5th day of March, 2026.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

27