**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:15-CR-119(5) |
| | § | |
| KODY DWAYNE ARDOIN | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Kody Dwayne Ardoin's ("Ardoin") Motion for Relief and for Recusal Pursuant to 28 U.S.C. § 455 (#870). In the motion, Ardoin seeks recusal of the presiding district judge and magistrate judge in the pending criminal case based on the court's rulings in this case as well as in a related civil case, Civil Action No. 1:19-CV-180, in which he sought habeas corpus relief via a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2555. On July 22, 2026, the court denied Ardoin's motion for recusal in the civil case (#46). Having considered the motion, the record, and the applicable law, the court is of the opinion that the motion for recusal should be denied in the case at bar, as well.

I. Background

On May 4, 2016, a federal grand jury in the Eastern District of Texas returned a four-count Third Superseding Indictment (#52) charging Ardoin in Count One with Conspiracy to Possess With Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846. He was not named in the remaining three counts. On January 25, 2017, following a three-day trial, a jury returned a guilty verdict against Ardoin as to Count 1 of the Third Superseding Indictment. Subsequently, on October 2, 2017, the court sentenced Ardoin to 324 months' imprisonment (adjusted by 51 months to 273 months' imprisonment pursuant to U.S.S.G. § 5G1.3(b)). On September 28, 2018, the United States Court of Appeals for the Fifth Circuit affirmed Ardoin's

conviction and sentence. *See United States v. Walker*, 750 F. App'x 324 (5th Cir. 2018). He did not seek a writ of certiorari from the Supreme Court of the United States. On April 11, 2019, Ardoin filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. On August 30, 2021, the court entered Final Judgment dismissing the motion without prejudice, which Ardoin did not appeal to the Fifth Circuit. On January 17, 2025, former President Joseph Biden accorded Ardoin an Executive Grant of Clemency, which reduced his sentence to 180 months' imprisonment (#813).

On October 10, 2024, Ardoin filed a Motion to Reduce Sentence (Compassionate Release under 3582(c)(1)(A)) (#802). On March 5, 2026, the court denied Ardoin's Motion to Reduce Sentence (#853). He appealed the court's ruling (#855), which the United States Court of Appeals for the Fifth Circuit dismissed on August 4, 2026, for want of prosecution due to his failure to timely file an appellate brief (#873). On November 21, 2025, Ardoin filed a Pro Se Emergency Motion to Correct Clerical Error Under Federal Rule Criminal Procedure (#840), which the court denied on February 19, 2026 (#850). He appealed the court's ruling (#856), which the United States Court of Appeals for the Fifth Circuit dismissed on August 4, 2026, for want of prosecution due to his failure to timely file an appellate brief (#873).

Ardoin now seeks recusal of the assigned magistrate judge and district judge pursuant to 28 U.S.C. § 455 due to an alleged "pattern of procedural irregularity, apparent bias, and failure to address Plaintiff('s) claims in accordance with law and precedent."

## II. Nature and Circumstances of the Offense of Conviction

The Fifth Circuit summarized the facts of Ardoin's offense of conviction in its opinion affirming the verdict and sentence, stating:

For about two decades, the home at 1107 Avenue A in Beaumont was the headquarters of a family-operated business. Crack cocaine was the product. The operation included the mother and father, their five sons, several cousins, and other family friends. Local police would occasionally make arrests, and some family members served time on state charges, but others would quickly pick up the slack and continue the operation. Taking a new approach, a federal investigation led to a grand jury indictment of thirteen people for conspiring to distribute 280 grams or more of crack cocaine between January 2006 and May 2016. Six were also charged with conspiring to possess firearms in furtherance of the drug trafficking.

Three defendants went to trial: two of the sons, Kristopher and Kody Ardoin, and one of the cousins, Zerrick Walker. All three faced the drug conspiracy charge. Only Kristopher was charged with the firearm conspiracy. The jury found them guilty on all counts, attributing 280 grams or more of crack to both the drug conspiracy and each defendant individually. The district court sentenced Kody to 27 years, Walker to a mandatory minimum of 20 years, and Kristopher to concurrent sentences of mandatory life for the drug offense and 20 years for the firearms conviction.

* * *

*Evidence about the conspiracy generally*. Numerous people in the community told police about buying crack at 1107 Avenue A. A constant stream of people entered and exited the house, perhaps as many as 15 an hour, and the two-block surrounding area received hundreds of disturbance calls. Police found crack in the house (among other drugs and paraphernalia) while executing four different search warrants, seizing 151.6 grams in the investigation. One witness bought crack from each of the defendants between 20-50 times after he began using in 2013.

***

*Evidence specific to Kody*. Witnesses also observed Kody repeatedly engaging in hand-to-hand drug transactions. He was present when police found crack cocaine during three searches of 1107 Avenue A. When police found crack after searching another house a block away, Kody was again at he scene. After one arrest, Kody informed an officer that he had hidden crack in his anal cavity; when recovered it weighed about 5.5 grams. A customer said he had observed Kody with as much as 28 grams of crack cocaine on one occasion. Another explained that Kody "rented" his car in exchange for crack cocaine for five months, giving him about an ounce a week (about 28.3 grams), an amount Kody later told him was worth more than $20,000. This witness noted that he sometimes rode with Kody and Walker as they sold drugs from his car.

*Ardoin*, 750 F. App'x at 325-27. The opinion contains a chart detailing the quantity of drugs with which each defendant was personally involved. With regard to Kody, the court lists the following quantities attributed to him: "Seized and Tested Crack Cocaine–151.6g; Kristopher's 2010 Arrest–3.9g; Kody's Car Stop–5.5g; Broussard's testimony–63g; Roberson's testimony–255g; Walker's admissions–24g; Total–503g." *Id.* at 328.

In Part II of the opinion, the Fifth Circuit addressed the sentencing issue regarding the quantity of crack cocaine attributable to Ardoin that he raised in his Motion for Compassionate Release and in his Motion to Correct Clerical Error:

> Kody disputes the 4.88 kilograms of crack cocaine the district court attributed to him in calculating his Guidelines range. The sentencing judge's assessment of the drug quantity reasonably foreseeable to a defendant is reviewed for clear error. *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013).
>
> The Presentence Report attributed 4.92 kilograms[1] of crack cocaine to Kody based on witness testimony, traffic stops, officer surveillance, and search warrants. With two unremarkable exceptions, the report and the trial evidence present identical information. The judge relied on the PSR and attributed the slightly smaller amount to Kody.
>
> Kody first argues this sentencing determination is at odds with the jury's attributing exactly 280 grams to him. This ignores the words "or more" in the question the jury answered.
>
> He next argues that the judge attributed at least 2.8 kilograms of crack cocaine to him based on only "nebulous" officer surveillance operations. But the drug quantity derived from surveillance was based on the trial testimony of police officers, in particular one officer who saw 10-15 transactions per hour at 1107

[1] The appellate court appears to have overlooked the fact that Paragraph 38 of the initial disclosure copy of the Presentence Investigation Report ("PSR") dated May 15, 2017, which calculated 4.92 kilograms of crack cocaine attributable to the conspiracy, was revised after further investigation by Probation. In the final report dated July 20, 2017, Paragraph 38 states that "the conspiracy involved at least 4.88 kilograms of 'crack' cocaine." This change occurred when the estimated grams of crack cocaine attributed to officer traffic stops of customers were decreased from 60 grams to 12.6 grams.

> Avenue A during his biweekly observations over five years. This testimony was sufficiently reliable to support the court's drug quantity finding. *See Valdez*, 453 F.3d at 267. We find no error in Kody's sentence.

*Id*. at 329.

Paragraph 38 of the PSR also contains a summary of the drug quantity calculations made by the Probation Officer as set forth in an accompanying table:

> In summary, the conspiracy involved at least 4.88 kilograms of "crack" cocaine, as summarized in the following table. It is noted that estimates obtained from officers' testimonies and witnesses' testimonies are concentrated on conspiracy conduct during the period approximately four years before the date of indictment. Although the defendant is responsible for drugs throughout the entire period of the conspiracy, in formulating a reasonable estimate, the base offense level will be determined considering the period approximately four years before the date of indictment.

The table lists the following incidents and estimated grams of "crack" cocaine involved:

> 9/10/15: Search warrant of the "trap" and house next door (cocaine HCl intended to be cooked into "crack cocaine")—84 grams
> Search warrants as testified by one officer—43 grams
> Officer traffic stop of customers—12.6 grams
> Witness testimony—580 grams
> Officer surveillance operations—4,100 grams
> Cash associated with **Kody Ardoin** (9/2/13 - 3.8 grams, and 6/18/14 - 28.7 grams)—32.5 grams
> Total of the traffic stops involving **Kody Ardoin** (5/13/12 - 4.53 grams, 10/26/12 - 0.03 gram, 8/20/15 - 0.08 gram, and 3/26/16 - 25.15 grams)—29.79 grams
> TOTAL—4,881.29 grams (4.88 kilograms)

Ardoin sought compassionate release/reduction in sentence contending that various sentencing errors violated his right to due process of law: (1) an enhancement that increased his offense level by 3 points for having a leadership role in the drug conspiracy; (2) categorizing his criminal history as Category III rather than Category II; and (3) being held accountable for 4,881 grams of cocaine base that should not have been attributed to him because 4,620 grams were

"unreliable." In his Motion to Correct Clerical Error, Ardoin asked the court to correct what he contended to be clerical errors in the Presentence Investigation Report. He disputed the calculation in Paragraph 35 of the drug quantity of 4,100 grams from officer surveillance and the calculation in Paragraph 34 of the drug quantity of 420 grams from witness testimony. He also challenged the adjustment imposed under U.S.S.G. § 3B1.1(b) for being a manager or supervisor of a drug trafficking organization as set forth in Paragraph 45. He claimed all these calculations to be clerical mistakes made by the Probation Officer when preparing the PSR that are subject to correction under Rule 36 of the Federal Rules of Criminal Procedure. Ardoin is currently housed at Federal Correctional Institution Manchester ("FCI Manchester"), located in Manchester, Kentucky, with a projected release date of February 10, 2029.

III. Recusal

Under 28 U.S.C. § 455(a): "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Additionally, a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). A court may evaluate a motion to recuse filed against it, and the determination of whether to recuse is committed to the court's sound discretion. *Polendo v. Corpus Christi Mun. Cts.*, No. 2:25-CV-00140, 2025 WL 3471322, at *7 (S.D. Tex. Dec. 3, 2025); *In re Highland Capital Mgmt. LP*, No. 3:25-CV-2579-B, 2025 WL 3470437, at *4 (N.D. Tex. Dec. 3, 2025) (citing *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982)); *United States v. Gann*, 2025 WL 3461547, at *2 (E.D. Tex. Dec. 2, 2025) (citing *Garcia v. City of Laredo*, 702 F.3d 788, 793-94 (5th Cir. 2012)).

When considering a motion under § 455(a), a court considers "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *United States v. Jordan*, 49 F.3d 152, 155 (5th Cir. 1995)); *accord United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2024); *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 484 (5th Cir. 2003). Specifically, the United States Court of Appeals for the Fifth Circuit has recognized that the court must "ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person," while recognizing that "an observer of our judicial system is less likely to credit judges' impartiality than [other members of] the judiciary." *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995); *United States v. Gann*, No. 4:24-cv-277, 2025 WL 3461547, at *2 (E.D. Tex. Dec. 2, 2025). The purpose of § 455 is to "avoid even the appearance of partiality." *Patterson*, 335 F. 3d at 484 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988)).

Here, Ardoin does not assert that the magistrate judge or district judge has a personal bias or personal knowledge regarding any of the persons, facts, events, or evidence involved in the underlying criminal case. Nor is the motion based on any remarks made to or about Ardoin, his family, or his friends. There is no suggestion that the magistrate judge or district judge uttered any personal insults or voiced any derogatory epithets to or about him. Moreover, Ardoin does not contend that the judges obtained any information about him or about any relevant evidentiary facts from an extrajudicial source. Instead, Ardoin complains about the courts' making adverse rulings in his criminal and civil cases. Yet, prior judicial rulings rarely constitute a valid basis for recusal.

"[N]ot all favorable or unfavorable opinions can be described as bias or partiality within the meaning of §§ 144 and 455(a)." *Brocato*, 4 F.4th at 302. "Rather, the concept of bias 'connote[s] a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)). Under § 455, "adverse rulings . . . by a judge 'will support a claim of bias only if they reveal an opinion based on an extrajudicial source or if they demonstrate such a high degree of antagonism as to make fair judgment impossible.'" *Id.* (quoting *United States v. Scroggins*, 485 F.3d 824, 830 (5th Cir. 2007)); *see Hagar v. Fed. Bureau of Investigation*, 170 F.4th 946, 954 (5th Cir. 2026) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (quoting *Liteky*, 510 U.S. at 555)); *Prewitt v. McDaniel*, No. 25-60225, 2025 WL 3145878, at *2 (5th Cir. Nov. 11, 2025) ("Disagreement with a court's prior decisions is not a proper basis to seek recusal."), *cert. denied*, 2026 WL 3145878 (Apr. 27, 2026). Rather, "they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555. In sum, Ardoin has not articulated any viable reasons that warrant recusal of the judges presiding in this case. Instead, Ardoin's filings reveal a fundamental misunderstanding regarding the proper grounds for compassionate release or for the plethora of other post-trial motions.

In his motion for compassionate release, Ardoin did not assert any of the recognized bases for compassionate release set forth in the United States Sentencing Guidelines, such as a prisoner's medical problems, his age, his family responsibilities, his abuse while in custody, or an outbreak of disease in the prison housing him. Instead, he challenged issues underlying the validity of his conviction and sentence, such as the calculation of the quantity of crack cocaine attributed to him

at trial, the assessment that he played a leadership role in the offense, and the determination of his criminal history points and category. In fact, the court could have denied his motion outright based on controlling Fifth Circuit authority at the time which recognized the habeas-channeling rule—*United States v. Escajeda*, 58 F.4th 184, 186-87 (5th Cir. 2023). Yet, due to the unsettled nature of the law throughout the nation as to the permissible scope of a motion for compassionate release, the court addressed the issues he raised in his motion. Ardoin's arguments failed in large part, however, due to the fact that they did not fall within the parameters of a valid motion for compassionate release.

The United States Supreme Court has now made it clear that "[t]he compassionate release provision is not a vehicle for attacking the validity of a conviction." *Fernandez v. United States*, 608 U.S. ___, 146 S. Ct. 1292, 1307 (2026). "[T]he supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." *Id.* at 1302. Hence, a defendant cannot utilize a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) to dispute rulings made at trial or to challenge the calculation of his sentence. *Id.* The compassionate release statute does not allow a defendant the opportunity to "relitigate the facts underlying his original conviction and sentence." *United States v. Alvarado*, No. 23-10673, 2023 WL 8369581, at *1 (5th Cir. Dec. 4, 2023); *see United States v. Garcia-Gonzalez*, No. 23-50387, 2024 WL 445310, at *1 (5th Cir. Feb. 6, 2024) (holding that a defendant cannot challenge his conviction or original sentence through the appeal from the denial of a § 3582(c)(1)(A) motion). "Challenging the validity of a conviction through a compassionate release motion circumvents the exacting requirements of § 2255." *Fernandez*, 146 S. Ct. at 1301. Hence, Ardoin could not properly utilize his motion for compassionate release to challenge the

quantity of cocaine attributable to him, the imposition of a leadership role at sentencing, or the determination of his criminal history points and category. Similarly, Ardoin's claims alleging the ineffective assistance of trial and appellate counsel were not cognizable in such a motion, but rather, through a motion for habeas corpus relief, an avenue for relief Ardoin abandoned long ago when he failed to file documents within the applicable deadlines. In fact, Ardoin's claims were entirely misplaced in the context of a motion for compassionate release. His claims were instead "the province of direct appeal or a § 2255 motion, not a compassionate release motion." *Escajeda*, 58 F.4th at 187; *accord Fernandez*, 146 S. Ct. at 1305.

Therefore, neither the assigned magistrate judge nor district judge did any acts, made any comments, had any knowledge, or refrained from addressing any arguments espoused by Ardoin that could give rise to a valid recusal motion. Consequently, Ardoin's motion for recusal of the presiding magistrate and district judges is without merit.

III. Conclusion

Accordingly, consistent with the foregoing analysis, Ardoin's Motion for Motion for Relief and for Recusal Pursuant to 28 U.S.C. § 455 (#870) is DENIED.

SIGNED at Beaumont, Texas, this 18th day of August, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE